UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

SNAP DEVELOPERS LLC,

                          **Plaintiff,**

    -against-

ELIMELECH G. TABAK,

                          **Defendant.**

-----------------------------------------------------------------x

**OPINION AND ORDER**
**25-CV-1221 (NG)**

GERSHON, United States District Judge:

Plaintiff Snap Developers LLC ("Plaintiff") brings this diversity action against defendant Elimelech Tabak ("Defendant"), principally alleging breach of a Forbearance Agreement that would have forestalled a mortgagee affiliated with Defendant from foreclosing on property owned by 4202 Partners LLC ("Borrower") and improved by Plaintiff. Now pending before the court are two unopposed motions: a motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim and a letter-motion to dismiss the action pursuant to Fed. R. Civ. P. 41(b) for failure to prosecute. For the reasons stated below, both motions are granted and this action is dismissed with prejudice.

## BACKGROUND

The following facts are drawn from the docket sheet and Plaintiff's complaint, the allegations of which are assumed to be true for purposes of this Opinion and Order. On or about December 18, 2017, 4202 Fort Hamilton Debt LLC ("Lender") loaned $10 million to Borrower in connection with a construction project (the "Project") at 4202 Fort Hamilton Parkway, Brooklyn (the "Property"). That loan was secured by a mortgage on the Property and by the personal guaranty of three individuals: Samuel (a/k/a Shabsi) Pfeiffer, Dina Krausz, and Abraham Pinchus

1

Wieder (collectively, the "Guarantors").  Plaintiff, a limited liability company owned by Pfeiffer and his wife, was working on the Project and had spent about $1 million of its own money on it.

On January 15, 2019, Lender, Borrower, and Guarantors entered into a "Forbearance Agreement," a copy of which is attached to the complaint.  According to that agreement, Borrower had defaulted on the loan by failing to make monthly interest payments and to pay off the loan in full by the Maturity Date.  Under the terms of the Forbearance Agreement, Lender agreed to forbear from exercising its rights under the loan documents for a period of time in exchange for some additional money.  Neither Plaintiff nor Defendant were mentioned in the Forbearance Agreement.

On January 15, 2025,  Plaintiff—represented by Lawrence R. Kulak, Esq.—commenced this action by filing a complaint in state court.  The complaint alleges that Plaintiff provided "the majority of the [Project's] funding besides the loan[s]," including a $240,000 "forbearance payment," and "completed the majority of the work needed for the [P]roject."  (Complaint, ¶¶ 5–6)  Defendant, who was "in charge of" Lender and the loan, allegedly "reneged on the forbearance for no good reason," kept Plaintiff's forbearance payment, and caused Lender to foreclose on the Property.  (*Id.*, ¶¶ 7–8)

The complaint raises three claims.  First, although Plaintiff concedes that it was "not a named party in the [Forbearance Agreement]," (*id.*, ¶ 4), the complaint alleges breach of contract, asserting that Plaintiff was the "intended third party direct beneficiary" of the Forbearance Agreement, (*id.*, ¶2).  Second, the complaint alleges fraud: that Defendant "fraudulently broke" the Forbearance Agreement because he "knew that his offer of forbearance was never real and … planned from the beginning to breach the contract."  (*Id.*, ¶¶ 15–17)  Third, the complaint alleges an unjust enrichment claim, alleging that Defendant received "about $1 million … in money and services and improvements" from Plaintiff when it foreclosed on the Property.  (*Id.*, ¶ 19)  Plaintiff

2

seeks $5.24 million in damages, $5 million of which is the profit Plaintiff expected to make on the Project.  (*See id.*, ¶ 12)

Defendant, a New Jersey citizen, timely removed the action to this district, alleging diversity jurisdiction.  This case was initially assigned to Magistrate Judge Cho, whose Individual Motion Practices and Rules do not require a premotion conference.  Defendant filed a motion to dismiss on March 11, 2025.

Mr. Kulak did not respond to the motion.  Rather, in early April 2025, he moved to be relieved as Plaintiff's counsel, asserting that he lacked the experience to litigate in federal court. At a conference on July 24, 2025, Defendant's counsel, Jeffrey Fleischmann, opposed that motion, asserting that it was a "delay tactic" that would prejudice his client.  Mr. Fleischmann explained that Defendant had "very significant bank loans," that the banks were inquiring about this action, and that this created a "problem" for Defendant. (Transcript of July 24, 2025, Conference, pp. 4– 5).  But after Mr. Pfeiffer stated that he expected to hire a new attorney within a few days, Judge Cho granted the motion.  The magistrate judge gave Plaintiff until August 6, 2025, to retain counsel and warned that he would recommend dismissal of this action if Plaintiff missed the deadline.

Despite Mr. Pfeiffer's assurances, Plaintiff remained unrepresented by August 6, 2025.  At a conference on that date, Mr. Pfeiffer again represented that he expected to hire counsel "[w]ithin the next few days." (Transcript of Aug. 6, 2025, Conference, p. 2)  Judge Cho did not recommend dismissal; instead, he rescheduled the conference for August 14, 2025, and again warned Mr. Pfeiffer that he would recommend dismissal if Plaintiff did not retain counsel.

Although an attorney named Joshua Reid Bronstein appeared at the August 14 conference, he stated that he had not been "officially" retained as counsel for Plaintiff.  Judge Cho gave Mr.

3

Bronstein until August 20, 2025, to file a notice of appearance and warned, for a third time, that he would recommend dismissal if Plaintiff proved unable to secure representation.

Mr. Bronstein filed his notice of appearance on August 19, 2025. By then, this case had been reassigned from Judge Cho to the undersigned, whose Individual Rules require a premotion conference. Accordingly, on August 19, 2025, Defendant filed a premotion conference request for permission to move to dismiss the complaint.

In a letter dated September 2, 2025, Mr. Bronstein opposed that premotion conference request, stating that Plaintiff intended to amend its pleading to join a non-diverse defendant. But Plaintiff never moved to amend. At the premotion conference on November 21, 2025, Mr. Bronstein explained that he had "some issues" with his client and that he intended to move to be relieved. (Transcript of Nov. 21, 2025, Conference, p. 9) The court then set a briefing schedule, which required that Plaintiff respond to the motion to dismiss by December 19, 2025, and made it clear that a motion to be relieved as counsel would not occasion an extension of that deadline.

Mr. Bronstein filed his motion to be relieved on November 25, 2025, alleging an irreconcilable conflict with Mr. Pfeiffer over legal strategy. Judge Cho granted that motion at a December 11, 2025, conference which Mr. Pfeiffer did not attend, despite having received advance notice of the conference from both Mr. Fleischmann and Judge Cho's chambers. Judge Cho again noted that Plaintiff could not proceed without counsel and granted Defendant leave to move to dismiss for failure to prosecute on December 24, 2025, if Plaintiff failed to retain an attorney by then.

When no attorney appeared for Plaintiff by December 24, 2025, Defendant filed a letter-motion to dismiss this action with prejudice pursuant to Fed. R. Civ. P. 41(b). To date, Plaintiff has not responded to that letter-motion or filed an opposition to Defendant's motion to dismiss.

**DISCUSSION**

The Rule 12(b)(6) Motion

Although Plaintiff has failed to respond to Defendant's motion to dismiss for failure to state a claim, "the lack of opposition does not, without more, justify dismissal." *James v. John Jay Coll. of Crim. Just.*, 776 F. App'x 723, 724 (2d Cir. 2019). "[T]he sufficiency of a complaint is a matter of law that the district court is capable of determining based on its own reading of the pleading and knowledge of the law." *Goldberg v. Danaher*, 599 F.3d 181, 184 (2d Cir. 2010) (internal quotation marks and brackets omitted). "If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal." *McCall v. Pataki*, 232 F.3d 321, 323 (2d Cir. 2000).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). "The court accepts as true all well-pleaded factual allegations in the complaint, [and] draws all reasonable inferences in favor of the nonmoving party." *Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 462 (2d Cir. 2019) (internal quotation marks omitted). "Legal conclusions, standing alone, are not entitled to the assumption of truth unless supported by factual allegations that plausibly give rise to an entitlement to relief …." *Sharikov v. Philips Med. Sys. MR, Inc.*, 103 F.4th 159, 166 (2d Cir. 2024) (internal quotation marks omitted). Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Bell Atl. Corp.*

5

*v. Twombly*, 550 U.S. 544, 570 (2007)).  Facial plausibility exists when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

In this case, none of the three claims alleged in Plaintiff's complaint states a plausible claim to relief.  The first claim alleges that Defendant breached the Forbearance Agreement.  "Under New York law, unless a party has contractual privity or is a third-party beneficiary of a contract, it lacks standing to enforce the terms of the agreement."  *Eaton Vance Mgmt. v. ForstmannLeff Assocs., LLC*, 2006 WL 2331009, at *6 (S.D.N.Y. Aug. 11, 2006) (footnote omitted) (collecting cases).  The complaint concedes that Plaintiff is "not a named party in the agreement," but implies that it qualifies as a third-party beneficiary because it "was intended to have a position just as valid and responsible and beneficent as any named party."  (Complaint, ¶ 4)

"Although a third party need not be specifically mentioned in the contact before third-party beneficiary status is found, New York law requires that the parties' intent to benefit a third party must be shown on the face of the agreement."  *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 725 F. Supp. 712, 733 (S.D.N.Y. 1989) (citing cases).  Here, the Forbearance Agreement does not evince an intent to benefit Plaintiff.  Accordingly, Plaintiff does not have standing to bring this breach of contract claim.

Even if Plaintiff were a third-party beneficiary, it could not sue Defendant for breach of the Forbearance Agreement.  Although the complaint alleges that Defendant was "in charge of the lender[ ]" that signed the agreement (Complaint, ¶ 7), "[t]he general rule is that corporate officers cannot be held personally liable for a contract of their corporation if they do not purport to bind themselves individually under the contract."  *W.B. David & Co. v. DWA Commc'ns, Inc.*, 2004 WL

6

369147, at *3 (S.D.N.Y. Feb. 26, 2004).  There is nothing to suggest that Defendant intended to be personally bound by the Forbearance Agreement.

The second claim in Plaintiff's complaint is entitled "Fraud" but, like the first claim, alleges breach of the Forbearance Agreement.  Specifically, the claim alleges that Defendant "fraudulently broke the contract" because "his offer of a forbearance was never real" and he "planned from the beginning" not to honor the agreement.  (Complaint, ¶¶ 15, 17)  But "a contract action cannot be converted to one for fraud merely by alleging that the contracting party did not intend to meet its contractual obligations …." *Sun Prods. Corp. v. Bruch*, 507 F. App'x 46, 47–48 (2d Cir. 2013) (citing *Rocanova v. Equitable Life Assurance Soc'y*, 83 N.Y.2d 603, 614 (1994)).  Accordingly, Plaintiff's second cause of action does not state a claim for fraud.

Plaintiff's third claim seeks to recover for unjust enrichment, alleging that "Defendant received about $1 million … in money and services and improvements" from Plaintiff when it foreclosed on the Premises. (Complaint, ¶ 19)  Unjust enrichment is equitable relief, based on implied or quasi-contract.  *See Indyk v. Habib Bank Ltd.*, 694 F.2d 54, 57 (2d Cir. 1982).  Unjust enrichment "applies in situations where no legal contract exists, but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain, but should deliver to another." *Id.* (internal quotation marks omitted).  "[W]here a valid agreement exists between the parties, an action in quantum meruit to prevent unjust enrichment ordinarily is not available." *New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 118 (2d Cir. 2006) (citing *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388 (1987) ("The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter.")).

In this case, the complaint alleges the existence of several valid contracts, including the Note, the Mortgage, and the Forbearance Agreement. The alleged unjust enrichment occurred through operation of these contracts; Borrower failed to make the repayments required by the Note and Lender foreclosed on the Property, as permitted by the Mortgage. This foreclosure allegedly resulted in Plaintiff losing $1 million in improvements it had made to the Property. Plaintiff does not suggest that this result was not contractually authorized under the Mortgage, or that the Note and Mortgage were not valid contracts. Rather, Plaintiff alleges that Defendant violated the Forbearance Agreement by exercising his rights under these contracts. Since this case turns on interpretation of valid contracts, there is no need to resort to implied or quasi-contract and no basis for the unjust enrichment claim.

<u>The Rule 41(b) Motion</u>

Even if the complaint stated a claim, I would still dismiss this action pursuant to Rule 41(b) for failure to prosecute. Rule 41(b) provides that, "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). The Second Circuit requires that "a district court contemplating dismissing a plaintiff's case, under Rule 41(b), for failure to prosecute must consider: '[1] the duration of the plaintiff's failures, [2] whether plaintiff had received notice that further delays would result in dismissal, [3] whether the defendant is likely to be prejudiced by further delay, [4] whether the district judge has take[n] care to strik[e] the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard … and [5] whether the judge has adequately assessed the efficacy of lesser sanctions.'" *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001) (quoting *Alvarez v. Simmons Mkt. Research Bureau, Inc.*, 839 F.2d 930, 932 (2d Cir.1988)). "Generally, no one factor is dispositive," and "a district

court is not required to discuss each of the factors on the record ….”  *Martens v. Thomann*, 273 F.3d 159, 180 (2d Cir. 2001).  However, before dismissing a case with prejudice pursuant to Rule 41(b), a district court must make a finding of “willfulness, bad faith, or reasonably serious fault” by evaluating the factors.  *Baptiste v. Sommers*, 768 F.3d 212, 217 (2d Cir. 2014).

The *LeSane* factors weigh strongly in favor of dismissing this case.  First, in the more than 12 months since this case was removed to federal court, Plaintiff has been unable to find an attorney willing to represent it on a permanent basis.  Mr. Kulak—the attorney who commenced this action in state court—moved to be relieved within a month of the action's removal, claiming he lacked the knowledge and ability to handle the case in federal court.  Although Plaintiff's principal, Mr. Pfeiffer, twice assured Judge Cho that Plaintiff would hire new counsel within a few days, Plaintiff remained unrepresented until August 19, 2025, when Mr. Bronstein appeared on its behalf.  But just over three months later, Mr. Bronstein also moved to be relieved, alleging irreconcilable differences with Mr. Pfeiffer over legal strategy.

In the months since Judge Cho granted Mr. Bronstein's motion, no attorney has appeared for Plaintiff.  The court has not received anything to suggest that Plaintiff is actively searching for new counsel or any assurances that counsel will appear for Plaintiff in the foreseeable future.  Rather, Plaintiff allowed the time for filing responses to Defendant's motions to dismiss to expire without a request for extension of these deadlines.  This suggests that Mr. Pfeiffer, who has communicated directly with the court in the past, does not expect to retain counsel for Plaintiff anytime in the near future.

Second, Plaintiff is well aware that it needs counsel to proceed with this action and has been repeatedly warned that this action might be dismissed if counsel did not appear.  In a document that accompanied Mr. Kulak's motion to be relieved, Mr. Pfeiffer acknowledged that an

"LLC is required to appear through counsel in this Court." (Letter to the Honorable Court from Samuel Pfeiffer dated April 2, 2025) Judge Cho reminded Plaintiff of this fact at conferences on July 24, August 6, August 14, and December 11, 2025, and warned that he would recommend dismissal of the action if Plaintiff was unable to retain counsel.

Third, Defendant's counsel represents that the delay in resolving this litigation is prejudicing his client. At the July 24, 2025, conference, Defendant's counsel explained that Defendant has "very substantial bank loans," that those creditors were inquiring about this action, and that the unsolved litigation was creating a "problem" for Defendant. (Transcript of July 24, 2025, Conference, pp. 4–5) Mr. Kulak denied engaging in dilatory tactics, (*id.*, p. 6), but did not challenge the assertion of prejudice. And even if he had, "[p]rejudice to defendants resulting from unreasonable delay may be presumed." *Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 43 (2d Cir. 1982). "Defendants should not be forced to bear the expense of defending a lawsuit when the plaintiff has shown little or no interest in pursuing that lawsuit." *Antonios A. Alevizopoulos and Assocs., Inc. v. Comcast Int'l Holdings, Inc.*, 2000 WL 1677984 at *3 (S.D.N.Y. Nov. 8, 2000).

Fourth, the court has taken extraordinary steps to protect Plaintiff's right to due process and a fair chance to be heard. Defendant first moved to dismiss in mid-March 2025; the court ultimately gave Plaintiff until mid-December 2025 to respond. And although Judge Cho repeatedly threatened to recommend dismissal of the action for failure to prosecute, he never acted sua sponte. Rather, he waited until Plaintiff's second counsel was relieved before granting Defendant leave to file a Rule 41(b) motion. Plaintiff had ample opportunity to oppose that motion but, to date, has failed to do so.

Fifth, after carefully considering the facts set forth above, I conclude that dismissal is the only practical option. The court has already waited well over three months for Plaintiff to hire

10

new counsel and respond to the pending motions to dismiss. There is nothing to suggest that Plaintiff is attempting to do so, or any reason to expect that Plaintiff will resume prosecuting this action. Indeed, the lack of communication from Mr. Pfeiffer and the fact that the claims asserted in the complaint are meritless, as discussed above, suggests that this action was not brought in good faith.

I recognize that "dismissal for lack of prosecution is a 'harsh remedy' that should 'be utilized only in extreme situations.'" *Lewis v. Rawson*, 564 F.3d 569, 575–76 (2d Cir. 2009) (quoting *Minnette v. Time Warner*, 997 F.2d 1023, 1027 (2d Cir.1993)). However, Mr. Pfeiffer's failure to appear at the December 11, 2025, conference and Plaintiff's failure to prosecute over the last three months demonstrates that it has abandoned the action. Accordingly, Defendant's motion to dismiss this action with prejudice pursuant to Fed. R. Civ. P. 41(b) is also granted.

## CONCLUSION

For the reasons stated above, Defendant's motions to dismiss this action for failure to state a claim and for failure to prosecute are both granted. This action is dismissed with prejudice. The Clerk of Court shall enter judgment for Defendant and Defendant's counsel is directed to mail a copy of that judgment and this Opinion and Order to Mr. Pfeiffer at his last known address and to file proof of mailing on the docket sheet.

**SO ORDERED**

_____/S/_____

**NINA GERSHON**
**United States District Judge**

March 31, 2026
Brooklyn, New York

11